**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47275**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: August 20, 2020 |
| Plaintiff-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) |
| ANDREW REED WILSON, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender; Reed P. Anderson, Deputy Appellate Public Defender, Boise, for respondent. Andrea W. Reynolds argued.

_____

BRAILSFORD, Judge

The State appeals from the district court's order granting Andrew Reed Wilson's motion to suppress. Because we conclude reasonable suspicion existed based on the totality of circumstances, we reverse the court's order and remand the case.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The district court made the following factual findings in its ruling granting Wilson's motion to suppress:

During the early morning hours of December 8, 2018, [a] Pocatello Jack in the Box employee . . . contacted Pocatello Police in reference to what he believed to be an intoxicated driver in the drive-through lane of the restaurant. According to the testimony of [the employee], he called the police because the occupants of [the] car were laughing, and when [the employee] stated it would be a 10-15 minute wait for their order, the group told [him] they had alcohol in the car. In

1

response to [the employee's] phone call to the Pocatello Police Department, Officer Ryan Malone was dispatched to the Jack in the Box to perform a welfare check. Based on the information he had received, Officer Malone understood he would find a purple car in the drive-through lane of the Pocatello Jack in the Box whose occupants were possibly intoxicated.

When Officer Malone arrived at the restaurant, he made contact with the occupants of the vehicle. [Wilson] was the driver, and he explained to Officer Malone that the group was not intoxicated, but were just being rowdy while they were ordering food. According to Officer Malone's testimony, at the time he made his initial contact with [Wilson], he observed what appeared to be four empty 32-ounce beer cans on the floor of the vehicle.[1] Officer Malone then told [Wilson] to pull his car over to the side of the parking lot, so Officer Malone could check [Wilson's] eyes and ensure he was safe to drive. [Wilson] complied with that order and pulled his car into the parking lot. [Wilson] then exited his car and met Officer Malone at the back of the vehicle. Officer Malone testified that when the two met at the back of [Wilson's] car, he could smell the odor of an intoxicating beverage coming from [Wilson's] person. Officer Malone then performed standardized field sobriety tests on [Wilson]. Based upon [Wilson's] performance on those tests, he was arrested for suspicion of driving under the influence. Subsequent to [Wilson's] arrest, a search warrant was obtained to draw [Wilson's] blood. The results of the blood test showed [Wilson] had a blood alcohol content of .192.

(Footnotes omitted.) As a result of this encounter, the State charged Wilson with felony driving under the influence, Idaho Code § 18-8004.

Wilson filed a motion to suppress all the evidence obtained during the encounter arguing, among other things, that Officer Malone initially detained him in the drive-through lane and lacked reasonable suspicion to detain him at that time. The State did not respond to this motion before the parties proceeded to an evidentiary hearing, at which both the Jack in the Box employee and Officer Malone testified. At the conclusion of the hearing, the district court took the motion under advisement and ordered post-hearing briefing.

In its post-hearing brief, the State relied on the community caretaking function to explain Officer Malone's initial encounter with Wilson in the drive-through lane. Specifically, the State argued that Officer Malone was performing his community caretaking function when he approached Wilson's car and that Officer Malone did not actually detain Wilson until after Wilson exited his car in the parking lot when Officer Malone saw Wilson's "glassy eyes" and

---

1        Officer Malone also testified, "I could smell alcoholic beverage coming from the car, but I didn't know if it was coming from [Wilson] because there were other people in it." Although the district court did not include this fact in its findings, the court rejected the fact as sufficient to establish reasonable suspicion in its written ruling.

smelled the odor of alcohol coming from Wilson. At this point in time, the State argued, Officer Malone had reasonable suspicion to detain Wilson.

In a written decision, the district court rejected the State's argument that Officer Malone was performing a caretaking function when he approached Wilson's car in the drive-through lane, concluding "there was no evidence that Officer Malone had a genuine or warranted concern that any of the occupants of the vehicle were in need of any assistance." Rather, the court ruled Officer Malone detained Wilson in the drive-through lane when Officer Malone "instructed him to move his car from the drive through to the restaurant parking lot."

The district court further ruled that reasonable suspicion did not support this detention:

> Viewing the totality of circumstances, Officer Malone did not have reasonable suspicion to detain [Wilson]. A review of the facts known to Officer Malone and the inferences that can be reasonably drawn from the totality of circumstances [show Wilson's] detention was not supported by reasonable suspicion that he was engaged in criminal activity. First, a report to law enforcement that occupants in a vehicle located in a drive-through lane of a restaurant had alcohol in the car is not sufficient to establish reasonable suspicion of criminal activity. Further, the smell of alcohol coming from a vehicle with several occupants is not adequate to conclude that [Wilson] himself had consumed any alcohol. Likewise, the presence of empty beer cans in the car does not establish that [Wilson] had consumed any of the alcohol in the cans. Therefore, the detention of [Wilson] was impermissible.

The State timely appeals the district court's order granting Wilson's motion to suppress.

## II.

## ANALYSIS

### A.    The State's Challenge to the District Court's Ruling Is Preserved for Appeal

On appeal, the State no longer argues Officer Malone was performing a community caretaking function when he engaged Wilson in the drive-through lane. Rather, the State now directly challenges the district court's ruling by arguing Officer Malone had reasonable suspicion to detain Wilson in the drive-through lane. Wilson argues the State failed to preserve this argument. We disagree.

The Idaho Supreme Court has repeatedly held that the Court will not address new issues on appeal. In *State v. Gonzalez*, 165 Idaho 95, 439 P.3d 1267 (2019), the Idaho Supreme Court clarified the rule governing when a party has preserved or failed to preserve an issue for appeal. *Id.* at 97, 439 P.3d at 1269. The Court distinguished between a case in which a party consistently maintains the same issue or position but "polishes" its argument with citation to previously

3

uncited authority and a case in which a party raises a new substantive issue on which the trial court did not have the opportunity to rule. *Id.* at 98, 439 P.3d at 1270. The Court held that the former was a permissible "pragmatic evolution" of an appellate issue but that the latter was an issue unpreserved for appeal. *Id.* Further, the Court emphasized that it will not address on appeal "an issue or a party's position on an issue *that [the trial court] did not have the opportunity to address*." *Id.* at 99, 439 P.3d at 1271 (emphasis added).

As this language indicates, an exception to the preservation rule applies if a party argued the issue to the trial court or if the court actually decided the issue. *See, e.g.*, *State v. Duvalt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998) ("An exception to [the general preservation] rule . . . has been applied by this Court when the issue was argued to or decided by the trial court."); *State v. Jeske*, 164 Idaho 862, 868, 436 P.3d 683, 689 (2019) (noting trial court specifically ruled on issue defendant raised on appeal and stating "this Court recognizes a distinction between issues not formally raised below and issues that never surfaced below") (quotations and brackets omitted).

This exception applies in this case. We agree with the State that the district court had the opportunity to address the issue it raises on appeal--whether Officer Malone had reasonable suspicion to detain Wilson in the drive-through lane. Indeed, the court directly ruled that Officer Malone did not have reasonable suspicion to detain Wilson in the drive-through lane. On appeal, the State does not challenge any of the district court's factual findings but, rather, simply challenges the court's legal application of the reasonable suspicion standard to the facts as the court found them. Specifically, the State argues that--contrary to the court's ruling--the Jack in the Box employee's tip about alcohol in Wilson's car, the odor of alcohol emanating from the car, and the presence of empty beer cans in the car constituted reasonable suspicion to detain Wilson in the drive-through lane.

The facts on which the State relies on appeal to argue that reasonable suspicion existed are the exact same facts the court relied on to conclude the State failed to establish reasonable suspicion. Because the court directly addressed and ruled on the issue of reasonable suspicion based on the same facts the State relies on to argue the contrary, the State's argument is preserved for appeal.

4

**B.**     **Reasonable Suspicion Existed Under the Totality of Circumstances**

As noted above, the State argues that the Jack in the Box employee's tip, the presence of four 32-ounce empty beer cans in the car, and a strong odor of alcohol emanating from the car established reasonable suspicion to detain Wilson in the drive-through lane. Wilson responds that Officer Malone's detention was based on "nothing more than a hunch" and "was a fishing expedition."

The standard of review of a suppression motion is bifurcated. When a party challenges a decision on a motion to suppress, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment's reasonableness requirement applies to brief investigatory detentions. *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). An investigative detention is permissible if it is based on specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *Bishop*, 146 Idaho at 811, 203 P.3d at 1210. The reasonable suspicion standard, however, requires more than mere speculation or instinct on the part of the officer and must be evaluated on the totality of the circumstances at the time of detention. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). An officer may draw reasonable inferences from the facts in his possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Applying these principles to the facts in this case, we respectfully disagree with the district court's ruling that Officer Malone did not have reasonable suspicion to detain Wilson in the drive-through lane. The facts of which Officer Malone was aware when he encountered Wilson in the drive-through lane are commonly relied on to establish reasonable suspicion. For

5

example, the general odor of alcohol emanating from a vehicle may establish a basis to search the vehicle. *See State v. Wigginton*, 142 Idaho 180, 183-84, 125 P.3d 536, 539-40 (Ct. App. 2005) (noting "[a] number of jurisdictions have held that the smell of alcohol alone or the smell of alcohol in conjunction with other factors is sufficient for probable cause to search a vehicle for an open container" and concluding probable cause existed to search vehicle based on "the odor from the vehicle and additional information," including occupants denied drinking; odor was "overwhelming;" and defendant was not under the influence).

Further, an identified citizen-informant's tip to law enforcement about criminal activity may give rise to reasonable suspicion--even if the informant did not personally witness the illegal activity. *See Bishop*, 146 Idaho at 814, 203 P.3d at 1213 ("A citizen-informant's tip may give rise to reasonable suspicion even when it is based on a third party's observation of illegal activity."); *see also State v. Van Dorne,* 139 Idaho 961, 965, 88 P.3d 780, 784 (Ct. App. 2004) (concluding known citizen-informant's tip indicating suspect was likely intoxicated and describing suspect's vehicle provided reasonable suspicion to conduct stop).

In this case, the Jack in the Box employee testified that an occupant of Wilson's car stated that "we have alcohol in the car, so it's okay for the wait" and that the employee "suspected the person was drunk." This tip had indicia of reliability including that: (1) law enforcement knew the Jack in the Box employee's identity, the basis of his knowledge, and his location; (2) the employee's knowledge was based on his first-hand observations of events as they were occurring; and (3) Officer Malone corroborated the employee's tip within five to ten minutes after receiving the tip and while Wilson was still in the drive-through lane. *See Bishop*, 146 Idaho at 814, 203 P.3d at 1213 (listing factors indicative of informant's reliability).

We hold that Officer Malone had reasonable suspicion to detain Wilson in the drive-through lane based on the facts known to him at that time, which included the Jack in the Box employee's report that the occupants of Wilson's car had alcohol; the odor of alcohol emanating from the car; and the presence of empty beer cars. Although perhaps any single one of the facts alone may have been inadequate to establish reasonable suspicion, taken together under the totality of circumstances, the facts established reasonable suspicion that all of the vehicle's occupants may have been drinking. In particular, none of the facts Officer Malone knew at the time he detained Wilson ruled out the possibility that Wilson had been drinking. As a result, Officer Malone had reasonable suspicion to detain Wilson in the drive-through lane.

6

## III.

## CONCLUSION

We hold that the district court's direct ruling on the issue of whether Officer Malone detained Wilson in the drive-through lane preserved that issue for appellate review. Further, we hold that based on the totality of circumstances, reasonable suspicion existed to detain Wilson in the drive-through lane. Consequently, we reverse the court's order granting Wilson's motion to suppress and remand the case.

Judge GRATTON and Judge LORELLO **CONCUR**.